THE CLEVELAND RY. CO. *v.* DURSCHUK, A MINOR.

(Decided December 10, 1928.)

*Messrs. Squire, Sanders & Dempsey,* for plaintiff in error.

*Messrs. Krieg, Sammon & Stendel,* for defendant in error.

SULLIVAN, P/ J. The plaintiff below, Ruth Durschuk, a minor, 19 years of age, who sues through her mother as next friend, recovered a judgment in the court below against the Cleveland Railway Company for damages for false imprisonment.

It is sought to reverse the judgment on the grounds that the court erred in its instructions to the jury with respect to the title and ownership of a $20 bill found on the floor of the street car of the railway company December 13, 1927, while plaintiff as a passenger was being conveyed from the public square to her home in the vicinity of West Twenty-Fifth street and Clark avenue; erred with respect to the question of the preponderance of the evidence; with respect to the exclusion of material issues, as

well as on the question, under the record, of false imprisonment.

It appears from the record by credible evidence, although in conflict with other evidence in the case, that the young lady just after she took her seat in the car noticed a $20 bill on the floor of the car and immediately picked it up. Replying to an inquiry of a fellow passenger, she anwered that she had found some money, without stating the denomination of the bill, and prior to the arrival of the street car at her point of destination she notified the conductor of the finding of the $20 bill. She thereupon was interrogated as to her name and address, which she gave, and was advised by the conductor to transfer the bill to his possession, which she refused to do. After some argument she returned to her seat in the car, and when the corner of West Twenty-Fifth street and Clark avenue was reached, the place where she was to alight to return to her home, she attempted to leave the car.

There is credible evidence supporting the statement, although in conflict with other evidence, that the conductor refused to allow her to alight until she gave him the money. Immediately after this conversation, and after refusing to comply with his request, she remained in the car for a period of about a half an hour, while the car was traveling a distance of two miles to the car barns, where, in the conductor's company, and after some conversation at the office, she gave her name and left the money. Some time afterward a representative of the company notified the plaintiff that as no one had claimed the $20 bill she was entitled to the same, but she refused to accept the money, because, in the meantime, the

case at bar for false imprisonment had been commenced.

On March 4, 1927, the following order was issued by the railway company concerning lost property found by trainmen while on duty, or found by passengers and turned over to trainmen, which rule or order was signed by the general superintendent and regularly posted:

"The Cleveland Railway Company, Operating
Department.
"Bulletin.

\* \* \* \* \* \* \* \*

"Subject: Handling lost articles found by trainmen while on duty or by passengers and turned over to trainmen.

"To Trainmen—All lines.

"We again call your attention to the handling of all articles found by trainmen while on duty or by passengers and turned over to trainmen.

"All articles found by trainmen while on duty, whether on car or on street, must be turned in to Clerk at Station immediately, proper tag being made out, giving full details.

"Should the article be found on the car by a passenger, conductor will advise such passenger that said article should be turned over to his custody in order that passenger losing same may have an opportunity to recover. Trainmen will secure passenger's name and address and place same on tag as the finder when turning article in to Clerk, so that in the event article is not called for, it can be returned to the party finding same. Trainman should be very particular in all cases where article is found by passenger to secure this information.

"Following the above rules will protect the rights of the finder and at the same time give the loser a fair chance to recover his property.

"Date: March 4, 1927.

"By Order of [Signed] A. L. Behner,

"General Superintendent.

"No. 2893."

The above rule is reasonable in its terms, is based upon proper motives, and is equally to the advantage of the loser of property and to all other parties concerned. It is clear from the record, however, that the refusal of the conductor to allow the passenger to alight at her destination, and her detention by him beyond the point of her destination until the car traveled a distance of about two miles, which consumed about 30 minutes of time, created a situation which was not covered by the order above quoted, and thereby the conductor in charge of the car restrained the liberty of the passenger to come and go according to her desire.

It is argued that if the conductor acted beyond the scope of his employment there is no agency of a binding and legal nature creating liability on the part of the company; but it is our judgment that, by inference at least, there was a basis for the conduct of the conductor growing out of the order of March 4, 1927, to the extent at least that it cannot be meritoriously claimed that the conductor was acting beyond the scope of his employment.

Under the record we think that, inasmuch as the money was found on the floor of the car, there is derivable therefrom, as a reasonable inference, the conclusion that the money was lost, because it is perfectly obvious that the owner of the money did

not intentionally place the bill upon the floor and then leave the car, having forgotten where it was placed. Common sense and human experience lead to but one inevitable fact, and that is that during transportation no one would put a $20 bill beside him upon the floor of a street car, as he would a package, with the intention of picking it up and carrying it away at the end of the journey. Therefore we think the application of the law as to lost property must necessarily be the interpretation justified by the record in the case. Lost property is not intentionally placed by the owner where it is found. The parting with possession is casual and involuntary. Lost property does not take into consideration the employment of the owner's will in depositing it where it is found.

Applying this principle of law, it is our conclusion that the $20 bill was lost property, and, under the authorities, and pursuant to the record in the case at bar, the finder of the property had a prior claim thereto as against any one excepting the actual owner.

In *Brooks* v. *State*, 35 Ohio St., 46, it was held that lost property which has not been abandoned by the owner is the subject of larceny by the finder, but he is not bound to make search for the owner.

The element of determination is whether the finder deals honestly with the property, or whether he attempts to conceal it, and the facts and circumstances of the case determine the question of intent.

In the instant case there is no issue as to the honesty of the plaintiff minor, and thus, as against every one but the actual owner, she had first right to the property found, and therefore the conductor,

unless with the consent of the passenger, had no more right than any one else other than the true owner to compel the passenger to give up the property. Therefore, the passenger was within her legal rights, and the conductor, in the scope of his employment, under the record of the case, had no right to prevent the passenger from alighting, or to detain her on the car until it satisfied his purpose, the laudability of which there can be no question, for the rule promulgated is a wise one and the conductor was acting in good faith in the discharge of his duty; but in our judgment he went beyond his power when he restrained the passenger of her liberty.

The person who drafted this order must have had this view of the law in mind, for it appears from the instrument itself that a salient feature thereof is the cooperation of the passenger.

The superiority of the right of the passenger as against all persons but the owner is laid down in the following authorities: *Hamaker* v. *Blanchard,* 90 Pa., 377, 35 Am. Rep., 664; *Bridges* v. *Hawkesworth,* 15 Jur., 1079, 21 L. J., Q. B., N. S., 75, 7 Eng. L. & Eq. Rep., 424; *Bowen* v. *Sullivan,* 62 Ind., 281, 30 Am. Rep., 172; *Brewer* v. *State,* 93 Ark., 479, 125 S. W., 127, 30 L. R. A. (N. S.), 339, 20 Ann. Cas., 1378; 9 A. L. R., 1392, note.

Under these authorities and the record in the case it is our judgment, having examined the instructions of the court with respect to superiority of title and possession of the bill in plaintiff below, that there was no prejudicial error, for the reason that the instructions gave voice to the authorities herein cited, and to the testimony of the case, notwithstanding the claim that the conductor, as the agent of the

company, and having control of the car, therefore had the right of possession and control of the $20 bill.

The doctrine of the law as it applies to the finder of lost property is not invalidated because of the relationship between a passenger and a common carrier, for this would be to assume that an exception to the general rule favored the doctrine in the operation of a street car. There is no authority for such an exception to the general rule. When the possessor of the $20 bill alighted from the car at the end of the journey the relationship of passenger and common carrier had terminated, so that there was no duty owing such a person other than that which would apply if the conductor had found the money instead of the passenger.

The case of *Foulke* v. *New York Consol. Rd. Co.*, 228 N. Y., 269, 127 N. E., 237, 9 A. L. R., 1384, cited by able counsel for plaintiff in error, we think does not apply to the case at bar, for the reason that in that case the property was not lost in the sense of the law, because it was a loaf of bread left by a passenger, who had laid it down, concededly with the intention of picking it up again upon leaving the car.

In the case at bar we would have to depart from the ordinary rules of logic and the record in the case to liken the $20 bill found on the floor of a street car to a loaf of bread, left by a passenger who forgot to take it off the seat upon arriving at the destination. The conclusion is just as irresistible that the loaf of bread was "left," as that the $20 bill was "lost."

It is claimed that the court erred in defining the

preponderance of the evidence by giving the following instructions:

"Now, ladies and gentlemen of the jury, the burden of proving the contentions of the parties in this case is upon the party who asserts the affirmative of the issues, that is to say, the burden is upon the plaintiff to prove her contentions by what is known as a preponderance of the evidence.

"By a preponderance of the evidence is meant that evidence that you in your jury room in considering all of the evidence, and weighing it, conclude is the evidence that you believe, and that influences your minds in arriving at the conclusion which you reach. The weight of the evidence does not mean that one side has had more witnesses than the other. It simply means that if, when weighing all of the testimony of all of the witnesses with reference to their credibility, correctness of memory, and to the circumstances surrounding their testimony appearing in the case, the evidence of one side outweighs that of another, then such side is said to have the weight of the testimony or the preponderance of the evidence. So the burden is upon the plaintiff to prove her contention of false imprisonment by what is known and by the definition that I have just given you, of the preponderance of the evidence.

"Keeping in mind, therefore, the meaning of false imprisonment, you will determine from the evidence, and by the rules of evidence that I have given you, whether or not the plaintiff voluntarily went past her stop at Clark avenue and from there to the car barns, or whether or not such trip was forced upon her against her will, either by acts or words imposed or brought forth by the servant of

the defendant company within the scope of his employment."

It is argued that according to the decision of the Supreme Court in *Cincinnati Traction Co.* v. *Williams,* 115 Ohio St., 124, 152 N. E., 30, this charge is erroneous, but upon an examination of the instructions under consideration we do not think this authority applies, because of the following language which we emphasize as an excerpt from the instructions above quoted:

"It simply means that if, when weighing all of the testimony of all of the witnesses with reference to their credibility, correctness of memory, and to the circumstances surrounding their testimony appearing in the case, the evidence of one side outweighs that of another, then such side is said to have the weight of the testimony or the preponderance of the evidence."

Therefore, in the case at bar, in determining which side should have a verdict, the court instructed the jury that they must weigh all of the testimony of all of the witnesses and by this method determine whether the evidence of one side outweighs that of another. In other words, under the charge of the court, it was the consideration of all the facts and circumstances of the entire case which was to be the superstructure in determining whether the judgment should be for the plaintiff or the defendant. The distinction we make between the case at bar and the case of *Cincinnati Traction Co.* v. *Williams, supra,* applies to *Cincinnati Traction Co.* v. *Eyrich,* 25 Ohio App., 546, 159 N. E., 484.

Hence, it is our judgment that there is no error prejudicial to the plaintiff in error in these instructions under consideration.

As to the assignment of error, that the court erred in limiting and excluding issues from the consideration of the jury, it is our judgment that if there were any errors they can be classed as omissions instead of commissions, and therefore there was at least an equal responsibility resting upon both counsel and court, and under the authorities, where such a status exists, the request to supply the omissions must come from counsel before error can be predicated thereon.

We have examined the assignment of error as to the excessiveness of the verdict, but we cannot say, under the rules of law and the record in the case, that the judgment ought to be reversed on this ground.

The Supreme Court has held many times that, even though there are errors, unprejudicial in their nature, appearing in the record, yet, if substantial justice has been done in the light of the whole record, a reviewing court has no power to reverse, and the judgment below must stand. This is our view of the case at bar, and, thus holding, the judgment of the lower court is hereby affirmed.

*Judgment affirmed.*

VICKERY and LEVINE, JJ., concur.